IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION AT MEMPHIS

| | |
|---|---|
| **MONTERRIOUS HARRIS**, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| **CITY OF MEMPHIS, EMMITT MARTIN III, DESMOND MILLS, JR., JUSTIN SMITH, DEMETRIUS HALEY, TADARRIUS BEAN, and JOHN DOES 1-4, INDIVIDUALLY, AND IN THEIR OFFICIAL CAPACITIES AS CITY OF MEMPHIS LAW ENFORCEMENT OFFICERS,** | ) ) ) ) Case No.: 2:23-cv-2058-JTF-tmp ) ) ) ) ) ) |
| Defendants. | ) |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS
OF DEFENDANT CITY OF MEMPHIS**

Defendant City of Memphis ("the City" or "Defendant"), by and through counsel, respectfully submits this Memorandum in Support of its Motion to Dismiss Plaintiff Monterrious Harris's ("Plaintiff" or "Harris") Complaint for Damages and for Deprivation of Constitutional Rights ("Complaint"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim upon which relief can be granted.

For the purpose of the Motion to Dismiss, the Court must assume the facts as pled by Plaintiff are true, as that is the standard for the Court to analyze a motion to dismiss; however, the City unequivocally denies that the facts as alleged in the Complaint are accurate.

Even accepting Plaintiff's allegations as true, the Complaint fails to state any cognizable claim for relief against the City under federal law, and the Complaint should be dismissed in its

1

entirety.

In support of its Motion, the City states as follows:

I. **BACKGROUND**

A. **The Scorpion Unit**

In the Complaint, Plaintiff alleges that the Memphis Police Department ("MPD") employed a collection of MPD law enforcement officers that it named the Scorpion Unit in or around November 2021. (Compl., ¶¶ 46, 47.) Plaintiff alleges that the Scorpion Unit was mainly comprised of law enforcement officers with less than five years of experience with the MPD and as little as two years of experience. (*Id.*, ¶ 48.) Plaintiff alleges that "the Scorpion Unit was allowed to police the streets of Memphis without supervision" and without proper training. (*Id.*, ¶¶ 49, 50, 53.) Plaintiff alleges that the Scorpion Unit "only patrolled neighborhoods which were composed of primarily African-Americans." (*Id.*, ¶ 51.)

Plaintiff alleges that the officers who made up the Scorpion Unit had histories of criminal and/or violent behavior, which required waivers for their hire. (*Id.*, ¶ 56.) Plaintiff further alleges that the Scorpion Unit officers objectively lacked qualifications, education, and other typical prerequisites for a MPD officer. (*Id.*, ¶¶ 57, 58.)

Plaintiff alleges that the Scorpion Unit's *modus operandi* was to target and stop young black men without any legal justification, surround the suspects' vehicles, yell expletives and racial slurs at them, and then demand that they exit the vehicle or risk being shot. (*Id.*, ¶ 59.) Plaintiff alleges that the officers of the Scorpion Unit, would then physically assault the black men without any justification for doing so. (*Id.*)

Plaintiff alleges that MPD trained the Scorpion Unit officers to "remove or reposition their body cameras during each stop, and/or to yell commands to give the false appearance that the young black male occupants of the vehicles were resisting detainment or otherwise not

2

complying with lawful commands." (*Id.*, ¶ 60.) Plaintiff further alleges that MPD trained the officers in the Scorpion Unit to falsify affidavits of complaint that were submitted in conjunction with their arrests. (*Id.*, ¶ 61.)

Plaintiff concludes that "the Scorpion Unit was a group of violent aggressors, employed by the Memphis Police Department, to terrorize African-American communities in Memphis, Tennessee." (*Id.*, ¶ 62.) Plaintiff baldly alleges that "the Scorpion Unit violated the civil and constitutional rights of innumerable young, African-American men in Memphis whom they targeted through baseless traffic stops, false charges, false arrests, creating false pretexts to effectuate violent arrests, false or misrepresentative evidence of alleged crimes, extreme beatings of citizens during the effectuation of arrest, and obfuscation of body worn cameras to conceal violent police behavior during the arrests." (*Id.*, ¶133.) Plaintiff asserts that this conduct "formed a clear pattern of police power in abusing young, African-American men throughout Memphis through the vehicular equivalent of "stop and frisk" tactics which culminated in the foregoing enumerated constitutional abuses." (*Id.*, ¶134.) Plaintiff claims that MPD and the City knew or should have known that "the Scorpion Unit was continually violating the civil and constitutional rights of young, African-American men in Memphis." (*Id.*, ¶ 135.) Plaintiff alleges that the Scorpion Unit's actions were sanctioned by the MPD. (*Id.*, ¶ 65.)

Plaintiff specifically points to seven other allegedly "unconstitutional encounters" that preceded Plaintiff's alleged encounter between the Scorpion Unit with six named individuals, and one unnamed individual. (*See id.* at ¶¶ 136, 137.) Plaintiff alleges only that the named individuals had "unconstitutional encounters" with members of the Scorpion Unit (id. at ¶ 136), and that the unnamed individual was assaulted incident to arrest by the Scorpion Unit. (*Id.*, ¶ 137.) Plaintiff offers no further factual support for these allegations.

Plaintiff alleges that MPD knew of the Scorpion Unit's "pattern of unconstitutional conduct," but it failed to investigate those alleged assaults. (*Id.*, ¶ 140.) Plaintiff further alleges that MPD failed to train, supervise, and discipline the officers in the Scorpion Unit, which demonstrates the City's deliberate indifference which amounts to an official policy of inaction. (*Id.*, ¶¶ 149-152.)

Plaintiff alleges that Defendants Emmitt Martin III, Desmond Mills, Jr., Justin Smith, Demetrius Haley, Tadarius Bean and "Defendant John Does 1-4" (hereinafter collectively referred to as "Officer Defendants")[1] were all members of the Scorpion Unit. (*Id.*, ¶ 52.) The Officer Defendants Martin, Mills, Smith, Haley and Bean were later arrested and charged with second degree murder, aggravated kidnapping, official misconduct and official oppression, for crimes they allegedly later committed against another man, Mr. Tyre Nichols. (*Id.*, ¶ 83.)

The MPD permanently disbanded the Scorpion Unit on or about January 26, 2023. (*Id.*, ¶ 84).

**B.     The Incident Giving Rise to the Lawsuit**

In the Complaint, Plaintiff alleges that on January 4, 2023, he drove to the Twin Oaks apartment complex to pick up his cousin before they headed to downtown Memphis. (*Id.*, ¶ 89.) Upon arriving at the apartment complex, Plaintiff's cousin got into his vehicle while carrying a firearm. (*Id.*, ¶ 91.) Plaintiff alleges that his cousin secured the firearm between his seat and the middle console. (*Id.*, ¶ 92.) Plaintiff asserts that he did not know that his cousin was armed with a firearm or that a firearm was in his vehicle. (*Id.*, ¶ 93.) Plaintiff and his cousin spoke for approximately four to six minutes until his cousin exited the vehicle to run back inside his apartment to grab a jacket and shoes. *(Id.*, ¶ 94.)

---

[1] The Officers have been sued Individually and "in their official capacities as City of Memphis law enforcement officers."

When his cousin went back inside the apartment, Plaintiff began backing into a parking space. (*Id*., ¶ 95.) Plaintiff alleges that five or six men, who were allegedly wearing black ski-masks, approached and surrounded his vehicle, brandishing pistols and demanding that he exit the vehicle or "be shot." (*Id*., ¶ 96.) Plaintiff alleges that the men "swore at and hurled racial epithets" at him. (*Id*., ¶ 99.) Plaintiff allegedly "panicked and attempted to reverse his vehicle, striking an object located behind his vehicle prior to existing his vehicle with his hands raised." (*Id.* at PageID 5.) Upon exiting his vehicle, the men allegedly "grabbled, punched, kicked and assaulted Mr. Harris." (*Id*., ¶ 107.) Plaintiff alleges his face was "slammed into a concrete walkway." (*Id*., ¶ 108.) Plaintiff claimed he was beaten for approximately one to two minutes. (*Id*., ¶ 109.) Plaintiff alleges that after noticing witnesses were observing their conduct, "the Scorpion Unit's officers" then "ceased the beating, handcuffed and arrested Mr. Harris." (*Id*., ¶ 112.)

An officer allegedly took Plaintiff to jail. (*Id*., ¶ 113.) Plaintiff was purportedly "bleeding from the head" and his "left eye was swollen shut from punches and kicks to the face." (*Id*., ¶¶ 114-115.) Plaintiff alleges that he had difficulty walking because his right leg was swollen "from being stomped and kicked and his left leg "was gashed from the assault." (*Id*., ¶¶ 116-117.)

Plaintiff was taken to Regional One Health, where he received medical treatment. (*Id*., ¶ 120.) Following his discharge from Regional One Health, Plaintiff returned to jail, and was booked and processed. (*Id*., ¶ 121.) Plaintiff was incarcerated for multiple days until his family bailed him out. (*Id*., ¶ 122.)

Plaintiff claims that the Scorpion Unit's law enforcement officers falsified an affidavit of complaint by providing "a false narrative of the events leading to them approaching [him], and by failing "to mention their assault of [him]." (*Id*., ¶¶ 123-124.) Plaintiff alleges that the

4889-6873-8899

affidavit of complaint contained false charges against him including convicted felon in possession of a handgun, criminal trespass, evading arrest, intentionally evading arrest in an automobile, possession of firearm during a dangerous felony, possession of a controlled substance (and intent to manufacture, distribute/sell), tampering with fabricated evidence and possession of drug paraphernalia. (*Id.*, ¶ 125.)

## II.     LAW AND ARGUMENT

### A.     LEGAL STANDARD

In deciding a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must take all well-pleaded allegations in the complaint as true and construe those allegations in a light most favorable to the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

Rule 8 "demands more than an unadorned, the defendant-unlawfully-harmed me accusation." *Iqbal*, 556 U.S. at 678. While a complaint need not present detailed factual allegations, to be cognizable it must provide more than "labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 545 (emphasis added); *see also Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436-37 (6th Cir. 1988). The factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555 (citing authorities). In other words, "claims set

forth in a complaint must be plausible, rather than conceivable." *Id*. at 570.

A complaint must have a factual foundation, and the mere possibility "that a plaintiff might later establish some set of undisclosed facts to support recovery" is insufficient to survive a 12(b)(6) challenge. *Twombly*, 550 U.S. at 561 (internal quotation marks omitted). If the plaintiff does not "nudge his claims across the line from conceivable to plausible, his complaint must be dismissed." *Id*.

The *Twombly* plausibility standard consists of a "two-pronged approach." *Iqbal*, 556 U.S. at 679. Under the first prong, the Court identifies allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id*. The second prong requires that "when there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*.

"In the context of [§] 1983 municipal liability, district courts in the Sixth Circuit Court of Appeals have interpreted *Iqbal's* standards strictly." *Epperson v. City of Humboldt, Tenn.*, 140 F. Supp. 3d 676, 685 (W.D. Tenn. 2015) (quoting *Hutchison v. Metro. Gov't of Nashville & Davidson Cty.*, 685 F. Supp. 2d 747, 751 (M.D. Tenn. 2010)); *see also Horn v. City of Covington*, No. 14–73–DLB–CJS, 2015 WL 4042154, at *4 (E.D. Ky. July 1, 2015); *Sweat v. Butler*, 90 F. Supp. 3d 773, 778, n.1 (W.D. Tenn. 2015). A mere "formulaic recitation of the elements of a cause of action" is insufficient to state a claim upon which relief can be granted. *Birgs v. City of Memphis*, 686 F. Supp.2d 776, 780 (W.D. Tenn. 2010) (quoting *Twombly*, 550 U.S. at 555); *see also Jones v. Couvreur*, No. 17-CV-11185, 2017 WL 1543703, at *4 (E.D. Mich. Apr. 28, 2017) (dismissing complaint that relied on "mere boilerplate language" to suggest municipality liable under failure to train theory).

**B.   ARGUMENT**

    **1.   The Official Capacity Claims against the Officer Defendants should**

7

> **be dismissed because they are redundant with the claims against the City.**

The Court should dismiss Plaintiff's claims against the Officer Defendants in their "official capacities as City of Memphis law enforcement officers" because such claims are nothing more than the claims made against the City itself. The City is also named as a defendant, therefore, the "official capacity" claims against the Officer Defendants are redundant and should be dismissed. *See Muslim Cmty. Ass'n of Ann Arbor & Vicinity v. Pittsfield Charter Twp.*, 947 F. Supp. 2d 752, 761 (E.D. Mich. 2013).

A suit against a government official in his or her official capacity is "'only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (quoting *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 690, n. 55 (1978)). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* at 166 (citing *Brandon v. Holt,* 469 U.S. 464, 471–72 (1985)).

Claims against the Officer Defendants in their official capacities "are, in all respects other than name, to be treated as a suit against the entity." *Foster v. Michigan,* 573 Fed. Appx. 377, 390 (6th Cir. 2014) (quoting *Kentucky v. Graham,* 473 U.S. at 165) (internal quotation marks omitted). When, as here, the entity is a named defendant, official capacity claims against police officers are "redundant" and "superfluous." *Id. See Buckner v. Roy,* Case No. 2:15–cv–10441, 2015 WL 4936694, at *6 (E. D. Mich. Aug. 18, 2015) (official capacity claims against sheriff dismissed where county was also a defendant); *Horn*, 2015 WL 4042154, at *3 ("Suing a municipal officer in his official capacity for a constitutional violation pursuant to 42 U.S.C. § 1983 is the same as suing the municipality itself; [t]herefore, when a plaintiff brings § 1983 claims against a municipal entity and a municipal official in his official capacity, courts

will dismiss the official-capacity claims as duplicative.").

Here, Plaintiff sued the Officer Defendants as individuals and in their official capacities as officers of the MPD. (Compl., ¶¶ 4-7.) Plaintiff also sued the City for violation of his rights under the Fourth and Fourteenth amendments. (*Id.* at PageID 29.) Accordingly, Plaintiff's claims against the Officer Defendants in their official capacities should be dismissed with prejudice.

**2.  Plaintiff's Fourteenth Amendment Claim fails as a matter of law.**

Plaintiff allege that the City violated his Fourth and Fourteenth Amendments throughout the Complaint. (*See* Compl., ¶¶ 130, 141, 148, 149, 159, 171.) To succeed on a Fourteenth Amendment claim against the City, Plaintiff must first show that he had a property interest protected under the Fourteenth Amendment and that he was deprived of that interest, and then show that the procedures provided by the City were not sufficient to protect his right to due process. *Warren v. City of Athens,* 411 F.3d 697, 708 (6th Cir. 2005).

Plaintiff failed to allege any facts to support this claim. He does not allege a property interest protected under the Fourteenth Amendment of which he was deprived, nor does he allege any procedures used by the City that were insufficient to protect his right to due process. For these reasons, Plaintiff's Fourteen Amendment due process claim fails on its face.

To the extent Plaintiff is claiming a Fourteenth Amendment violation based on excessive force, that claim, too, fails as a matter of law. Only the Fourth Amendment—not the Fourteenth—provides the proper vehicle for evaluating such a claim. *"[A]ll* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach. *Graham v. Connor*, 490 U.S. 386, 395 (1989) (emphasis in original). *See also Aldini v. Johnson*, 609 F.3d 858, 866–67 (6th Cir. 2010) (joining the Ninth and Tenth Circuits in setting the dividing line

between the Fourth and Fourteenth Amendment zones of protection at the probable-cause hearing).

> 3. **Plaintiff's § 1983 Municipal Liability Claims against the City should be dismissed because Plaintiff fails to plead facts sufficient to sustain it under *Monell*.**

The Complaint does not assert a claim cognizable under 42 U.S.C. § 1983. Section 1983 provides a cause of action to those who suffer the deprivation of a federal right by someone acting under color of state law. *See, e.g.*, *Bright v. Gallia Cty.*, 753 F.3d 639, 660 (6th Cir. 2014). To prevail on a claim against a municipality under §1983, a plaintiff must establish both: (1) the deprivation of a constitutional right; and (2) the municipality's responsibility for that violation. *Doe v. Claiborne Cnty., Tenn. By and Through Claiborne Cnty. Bd. of Educ.*, 103 F.3d 495, 505–506 (6th Cir. 1996).

Furthermore, "a municipality cannot be held liable under § 1983 on a *respondeat superior* basis." *Mhoon v. Metro. Gov't of Nashville & Davidson Cnty.*, Tenn., No. 3:16-cv-01751, 2016 WL 6250379, at *6 (M.D. Tenn. Oct. 26, 2016) (citing *Thomas v. City of Chattanooga*, 398 F.3d 426, 432-33 (6th Cir. 2005)). Rather, municipal liability under § 1983 arises "when execution of a government's policy or custom ... inflicts the injury' of a constitutional violation." *David v. City of Bellevue*, Ohio, 706 F. App'x 847, 850 (6th Cir. 2017) (quoting *Monell*, 436 U.S. at 694). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" *City of St. Louis v. Praprotnik,* 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati,* 475 U.S. 469, 479–480 (1986)) (emphasis in original).

The Sixth Circuit recognizes four avenues by which a plaintiff can prove the existence of a municipality's illegal policy or custom and bring what is referred to as a "*Monell* claim"

against a municipality: "1) the municipality's legislative enactments or official agency policies; 2) actions taken by officials with final decision-making authority; 3) a policy of inadequate training or supervision; or 4) a custom of tolerance or acquiescence of federal rights violations." *Thomas v. City of Chattanooga*, 398 F.3d at 429 (citations omitted).

Here, although not explicitly pleaded, it seems that Plaintiff attempts to bring *Monell* claims based on the following: (1) MPD's alleged policy authorizing its officers "to assault, use excessive force, unlawfully detain, unlawfully arrest and/or falsely create criminal charges against individuals .… without a legal and/or constitutional justification" (Compl., ¶ 155); (2) MPD's custom of assaulting, using excessive force, unlawfully detaining, unlawfully arresting, and falsely creating criminal charges against individuals without any legal justification and in violation of individuals' constitutional rights (*Id.*, ¶¶ 155-157); and (3) MPD's alleged failure to train, supervise, and discipline its officers, including the officers in the Scorpion Unit and the Officer Defendants (*Id.*, ¶¶ 158, 159).

As explained below, all of Plaintiff's *Monell* claims fail as a matter of law.

      **a)**      **Plaintiff failed to state a claim that the City had an unlawful policy that gave rise to municipal liability.**

Plaintiff's *Monell* claim based on the alleged unlawful policy of MPD fails because Plaintiff failed to identify an official municipal "policy" that caused his injury. "[I]n *Monell* and subsequent cases, [the court has] required a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal "policy" or "custom" that caused the plaintiff's injury." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 403 (1997) (citations omitted). "Locating a 'policy' ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." *Id.* at 403-404.

11

Moreover, Plaintiff "must also demonstrate that, through its *deliberate* conduct, the municipality was the "moving force" behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Id.* at 404 (emphasis in original).

Here, Plaintiff's *Monell* policy claim fails on its face. Plaintiff failed to identify any specific policy of MPD, written or otherwise, that authorized the Officer Defendants to act in the manner alleged in the Complaint. Instead, Plaintiff merely asserts generally that his "rights were violated pursuant to the unconstitutional policies, procedures, customs, or practices, and deliberate indifference referenced herein, whether express or implicit…" (Compl, ¶ 177(a)). To the extent Plaintiff alleges that MPD adopted and implemented a policy of authorizing use of access force, excessive force, unlawful detention and arrest, and falsification of criminal charges (see *Id.* at ¶ 155), that is entirely implausible and insufficient to state a claim under *Monell*.

The facts of *Garner v. City of Memphis* are instructive here. Garner was detained by MPD as a suspect in an attempted murder. At the time of his arrest, he had an outstanding arrest warrant and was suspected of other crimes. When his alleged attempted murder victim woke up from a coma, she informed MPD that Garner was not her attacker, and Garner was released. *Garner v. City of Memphis*, 576 Fed. Appx. 460, 461, 2014 WL 3746543 (6th Cir. 2014). Garner filed suit against MPD alleging that MPD arrested him without probable cause, fabricated evidence against him, and defamed his reputation in the course of their investigation. The Sixth Circuit, in affirming the district court's dismissal of the case,[2] found that Garner failed to

---

[2] The district court dismissed the case under Rule 12(b)(6), but the Sixth Circuit treated the dismissal as a grant of summary judgment because the district court relied on affidavits submitted by the parties that did "little more than reiterate the contents of the Complaint. *Id.* at

4889-6873-8899

identify any unlawful policy or custom on the part of the City which authorized the police officers' actions. *Id.* at 462.

Here, just as in *Garner*, Plaintiff fails to identify the unlawful policy of the City of Memphis or Scorpion Unit that required its officers to act with impunity and in total disregard of established constitutional law.  Plaintiff cannot identify such a policy because one does not exist. Plaintiff admits that the Officer Defendants were later fired and the Scorpion Unit disbanded, but then asserts that it was the policy of MPD to authorize their illegal conduct.

Moreover, it defies logic to presume that any police department would implement a policy of authorizing its officers to unlawfully arrest and detain, assault, use excessive force, and falsify arrests as part of their official duties as law enforcement officers.  Thus, Plaintiff failed to plausibly identify any unlawful policy of the City that gave rise to his alleged injuries, and  his policy-based *Monell* claim must be dismissed.

### b) The Complaint fails to state a claim for an unlawful custom of MPD that gives rise to municipal liability under *Monell*.[3]

Plaintiff's unlawful custom claim fares no better.  Plaintiff alleges that the City adopted and implemented the customs of the Officer Defendants and the Scorpion Unit, of unlawfully arresting, detaining, using excessive force, and falsifying arrests.  (Compl, ¶¶ 155-158.) In

---

461.

[3] This Motion does not address the recitals contained in the Complaint's Introduction regarding the 2011 case related to the MPD's alleged "choir practice." (Compl., ECF No. 1, PageID 2.) Nor does this Motion address the allegations related to the "Beale Street Sweep," the 1978 Consent Decree, or the allegations related to Tyre Nichols, all of which are subject to a contemporaneously filed Motion To Strike. (*Id.* at PageID 2-5.)  Regarding the incident with Mr. Nichols, that incident clearly occurred several days after Plaintiff's arrest and may not be used to support a failure to act claim under *Monell*. *See, e.g., Miller v. Sanilac Cnty.*, 606 F.3d 240, 255 (6th Cir. 2010) (a failure to act claim requires a showing of "prior instances of unconstitutional conduct demonstrating that the [municipality] ha[d] ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury.") (emphasis added).

4889-6873-8899

support, Plaintiff alleges that "the Scorpion Unit violated the civil and constitutional rights of innumerable young, African-American men in Memphis whom they targeted through baseless traffic stops, false charges, false arrests, creating false pretexts to effectuate violent arrests, false or misrepresentative evidence of alleged crimes, extreme beatings of citizens during the effectuation of arrest, and obfuscation of body worn cameras to conceal violent police behavior during the arrests." (*Id.* at 133.)

While Plaintiff specifically points to several other allegedly "unconstitutional encounters" between the Scorpion Unit with certain named individuals, and one unnamed individual (*see id.* at ¶¶ 136, 137), Plaintiff makes a broad, sweeping allegation that these individuals were assaulted by members of the Scorpion Unit, but offers no details nor alleges any facts to support those allegations. Without more, Plaintiff's allegations related to these other "unconstitutional encounters" do not establish a ***plausible*** claim that the City follows a ***deliberate*** custom or policy of excessive force and unlawful arrests.

It is well settled that Plaintiff's claims must be more than merely conceivable— they must be plausible. *See, e.g., Twombly*, 550 U.S. at 547 (dismissing plaintiffs' complaint because plaintiffs "ha[d] not nudged their claims across the line from *conceivable to plausible*"). Plaintiff's allegations erroneously imply that identifying other persons and claiming they had similar encounters with the Scorpion Unit is sufficient to establish that the actions of the City involved a deliberate policy or custom relevant to this case. However, he provides no details about the outcome or disposition of those alleged prior encounters, which officers were involved, which specific customs or policies were relevant to those matters, or any other details to show how they are relevant here. Plaintiff's vague allegations related to those individuals' prior encounters with the Scorpion Unit are insufficient to state a plausible claim for relief or to

sustain the implication the City had a deliberate policy or custom of acting in a certain unlawful manner. *See Brent v. Wayne Cnty. Dep't of Human Servs.*, 901 F.3d 656 (6th Cir. 2018) (the court dismissed plaintiff's § 1983 complaint where the court characterized plaintiffs' allegations as "vague", suggesting that even adding such factual allegations would have been insufficient to state a plausible claim for relief.)

Plaintiff's sparse allegations related to the customs of the Scorpion Unit lack sufficient factual allegations to show the City had "fixed plans of action" that manifested as a practice with "the force of law" related to the alleged conduct of the Scorpion Unit's officers. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970). A "custom" for purposes of *Monell* liability must "be so permanent and well settled as to constitute a custom or usage with the force of law." *Monell,* 436 U.S. at 691 (internal quotation marks and citation omitted); *see also Feliciano v. City of Cleveland,* 988 F.2d 649, 655 (6th Cir. 1993), *cert. denied,* 510 U.S. 826 (1993). In turn, the notion of "law" must include "[d]eeply embedded traditional ways of carrying out state policy." *Nashville, Chattanooga & St. Louis Ry. Co. v. Browning,* 310 U.S. 362, 369 (1940). It must reflect a course of action deliberately chosen from among various alternatives. *City of Oklahoma v. Tuttle,* 471 U.S. 808, 823 (1985). In short, a "custom" is a "legal institution" not memorialized by written law. *Feliciano,* 988 F.2d at 655. Here, Plaintiff fails to allege how the MPD's alleged customs and practices of unlawfully detaining and arresting individuals, assaulting and using excessive force, and falsifying criminal charges are "so permanent and well settled" that they carry the force of law.

Importantly, even if the Officer Defendants had wrongfully detained and assaulted Plaintiff, as Plaintiff alleges, that fact alone is not enough to state a claim for relief against the City under *Monell*. *See* 436 U.S. at 691. Taking Plaintiff's allegations as true, Plaintiff has

4889-6873-8899

alleged nothing more than individual conduct by five officers—— that cannot reasonably be attributed to a custom, pattern, or practice of the City such that *Monell* liability would attach. *See Feliciano,* 988 F.2d at 654-55 ("municipalities do not 'cause' constitutional violations solely by having employed a constitutional tortfeasor).

For these reasons, Plaintiff's unlawful custom claim must be dismissed.

### c) Plaintiff's failure-to-train claim lack sufficient factual allegations to survive a motion to dismiss.

Plaintiff fails to plausibly plead a failure-to-train claim under *Monell*. "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 60 (2011). To establish municipal liability on this basis, a plaintiff must show "'(1) the training program was inadequate to the task the officer must perform, (2) the inadequacy is a result of the municipality's deliberate indifference, and (3) the inadequacy is closely related to or actually caused the plaintiff's injury.'" *Epperson*, 140 F. Supp. 3d at 684 (citation and quotations omitted). "Deliberate indifference requires a showing of 'prior instances of unconstitutional conduct demonstrating that the municipality has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury.'" *Id.* (quoting *Bonner–Turner v. City of Ecorse,* 627 Fed. Appx. 400, 414, 2015 WL 5332465, at *13 (6th Cir. Sept. 14, 2015) (emphasis added).

Here, while Plaintiff alleges a "pattern of the Scorpion Unit's violent assaults" and vaguely identifies seven encounters with other individuals (*see* Compl., ¶¶ 136, 137), Plaintiff does not allege that those encounters resulted from a deficient training program. Consequently, Plaintiff's allegations regarding the City's alleged failure-to-train amount to nothing more than a mere conclusion. (*See, e.g.* Compl., ¶ 145.)

16

4889-6873-8899

Plaintiff's failure-to-train claims also fails because he did not plead any factual allegations to support a causal link between the City's alleged failure to train and the Plaintiff's alleged injuries. In fact, the only plausible inference one can make from Plaintiff's allegations is that the Officer Defendants were acting **outside the bounds of their training** as MPD officers.

No amount of training could have prevented five rogue officers from acting outside the scope of their employment and in contravention to the constitutional rights of any of these individuals as pled in the Complaint. Plaintiff does not even allege as much. For these reasons, Plaintiff's failure-to-train claim must be dismissed.

### d) Plaintiff's failure to supervise, investigate, and discipline claim should be dismissed.

Plaintiff summarily pleads that, "Defendant City of Memphis failed to adequately supervise, investigate, and reprimand the Individual Defendants and the Scorpion Unit." (Compl, ¶ 164.) With these allegations, Plaintiff attempts to bring *Monell* claims based on the City's alleged *inaction* rather than any specific action. To state a municipal liability claim under an "inaction" theory, Plaintiff must establish: (1) the existence of a clear and persistent pattern of misconduct by the MPD officers; (2) notice or constructive notice on the part of the City of that misconduct; (3) the City's tacit approval of the unconstitutional conduct, such that its deliberate indifference in its failure to act can be said to amount to an official policy of inaction; and (4) that the City's custom was the "moving force" or direct causal link in plaintiff's constitutional deprivation. *See Claiborne Cty., Tenn. By & Through Claiborne Cty. Bd. of Educ.,* 103 F.3d at 508.

Plaintiff's failure to supervise/investigate claim fails because he did not allege that the City was on prior notice of any conduct by the Scorpion Unit such that it would trigger a responsibility to investigate the Scorpion Unit generally or the Officer Defendants specifically.

17

4889-6873-8899

While Plaintiff alleges a pattern of conduct of "violent assaults" by the Scorpion Unit (Compl., ¶ 25), Plaintiff does not allege any facts to show when—or in what manner— the City was on notice of those violations prior to the incident giving rise to the lawsuit.

A municipality can only be liable for turning a blind eye to conduct of which it is on notice. Here, Plaintiff fails to allege how or when the City was on actual or constructive notice of the conduct of these officers such that it triggered a duty for the City to supervise, investigate and discipline those officers. Accordingly, the Complaint fails the second prong of the "inaction" theory, and therefore the claim should be dismissed.

In sum, Plaintiff's *Monell* claims are nothing more than an attempt to hold the City liable for the alleged misconduct of the Officer Defendants under the doctrine of *respondent superior*. Consequently, they should be dismissed.

### 4. The City is immune from an award of punitive damages.

A municipality is immune from punitive damages under 42 U.S.C. § 1983. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981). Accordingly, Plaintiff's claim for punitive damages against the City should be dismissed.

## CONCLUSION

For the foregoing reasons, the City respectfully requests this Court to grant its Motion to Dismiss in its entirety.

Respectfully Submitted,

**BAKER DONELSON BEARMAN CALDWELL & BERKOWITZ, P.C.**

*s/ Bruce McMullen*
Bruce A. McMullen (#18126)
Jennie V. Silk (#35319)
165 Madison Avenue, Suite 2000
Memphis, Tennessee 38103
Telephone (901) 526-2000
bmcmullen@bakerdonelson.com
jsilk@bakerdonelson.com

## CERTIFICATE OF SERVICE

I, Bruce McMullen, hereby certify that on March 2, 2023, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, and that upon filing, such system will serve a copy of the foregoing upon all counsel of record in this action.

*s/ Bruce McMullen*
Bruce McMullen

19
4889-6873-8899